UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TWIN MASTER FUND, LTD., TWIN OPPORTUNITIES FUND, LP, AND TWIN SECURITIES, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>AKORN, INC., RAJAT RAI, DUANE A. PORTWOOD, ALAN WEINSTEIN, RONALD M. JOHNSON, AND BRIAN TAMBI,<br><br>    Defendants. | Civ. A. No. 1:19-cv-03648<br><br>Hon. Matthew F. Kennelly |
| MANIKAY MASTER FUND, LP AND MANIKAY MERGER FUND, LP,<br><br>    Plaintiffs,<br><br>    v.<br><br>AKORN, INC., RAJAT RAI, DUANE A. PORTWOOD, ALAN WEINSTEIN, RONALD M. JOHNSON, AND BRIAN TAMBI,<br><br>    Defendants. | Civ. A. No. 1:19-cv-04651<br><br>Hon. Matthew F. Kennelly |

**DEFENDANT DUANE A. PORTWOOD'S MEMORANDUM OF LAW
IN SUPPORT OF HIS SUPPLEMENTAL MOTIONS TO DISMISS IN PART
THE *TWIN MASTER FUND* AND *MANIKAY MASTER FUND* COMPLAINTS
FOR LACK OF SCIENTER PURSUANT TO FED. R. CIV. P. 12(b)(6) AND
<u>15 U.S.C. § 78u-4</u>**

**CRAVATH, SWAINE & MOORE LLP**
Robert H. Baron (admitted *pro hac vice*)
   825 Eighth Avenue
     New York, NY 10019
        rbaron@cravath.com

and

**FIGLIULO & SILVERMAN, P.C.**
James R. Figliulo
   10 S. LaSalle Street, Suite 3600
     Chicago, IL 60602
        jfigliulo@fslegal.com

*Attorneys for Defendants*


                Dated: September 13, 2019

## **TABLE OF CONTENTS**

 Page

TABLE OF AUTHORITIES ................................................................................................. ii

TABLE OF ABBREVIATIONS ........................................................................................... iv

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF ALLEGED FACTS..................................................................................2

ARGUMENT..........................................................................................................................2

I.     Legal Standard ..........................................................................................................2

II.    Plaintiffs' Section 10(b) and Common Law Fraud Claims Must Be Dismissed Against Mr. Portwood Because the Complaints, and the Documents Incorporated by Reference Therein, Fail to Establish an Inference of Scienter.............................................4

CONCLUSION.......................................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flotek Indus, Inc.*,
   915 F.3d 975 (5th Cir. 2019) ............................................................................................4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................................................3

*In re Brightpoint, Inc. Sec. Litig.*,
   2001 WL 395752 (S.D. Ind. Mar. 29, 2001) ................................................................4, 8

*Bd. Trustees of the City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*,
   811 F. Supp. 2d 853 (S.D.N.Y. 2011) ..............................................................................7

*City of Philadelphia v. Fleming Cos.*,
   264 F.3d 1245 (10th Cir. 2001) ........................................................................................4

*Connick v. Suzuki Motor Co.*,
   675 N.E.2d 584 (Ill. 1996) ................................................................................................2

*Cornielsen v. Infinium Capital Mgmt., LLC*,
   916 F.3d 589 (7th Cir. 2019) .......................................................................................3, 6

*Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*,
   2012 WL 1068761 (N.D. Ill. Mar. 29, 2012) ...................................................................7

*Greer v. Advanced Equities, Inc.*,
   683 F. Supp. 2d 761 (N.D. Ill. 2010) ...............................................................................7

*In re Huron Consulting Grp., Inc. S'holder Deriv. Litig.*,
   971 N.E.2d 1067 (Ill. App. Ct. 2012) ..............................................................................4

*Johnson v. Tellabs, Inc.*,
   262 F. Supp. 2d 937 (N.D. Ill. 2003) ...............................................................................4

*In re KSL Media, Inc.*,
   732 F. App'x 535 (9th Cir. 2018) ....................................................................................4

*Last Atlantis Capital LLC v. Chicago Bd. Options Exch., Inc.*,
   455 F. Supp. 2d 788 (N.D. Ill. 2006) ...............................................................................7

*Pedroli ex rel. Microtune, Inc. v. Bartek*,
   564 F. Supp. 2d 683 (E.D. Tex. 2008) ............................................................................4

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*,
    895 F.3d 933 (7th Cir. 2018) ...................................................................................2, 3

*Phillips v. Prudential Ins. Co. of Am.*,
    714 F.3d 1017 (7th Cir. 2013) ..........................................................................................6

*Rossy v. Merge Healthcare Inc.*,
    169 F. Supp. 3d 774 (N.D. Ill. 2015) ................................................................................7

*Stephenson v. Hartford Life & Annuity Ins. Co.*,
    2003 WL 22232968 (N.D. Ill. Sept. 26, 2003) ..................................................................8

*Stone ex rel. AmSouth Bancorporation v. Ritter*,
    911 A.2d 362 (Del. 2006) .................................................................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...........................................................................................................3

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
    475 F.3d 824 (7th Cir. 2007) ............................................................................................8

*Yeftich v. Navistar, Inc.*,
    722 F.3d 911 (7th Cir. 2013) ............................................................................................3

**Other Authorities**

Louisiana R.S. 12:1-842 ..........................................................................................................4

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| 201_ 10-K | Akorn's Annual Report on SEC Form 10-K for the fiscal year in question |
| Akorn or Company | Akorn, Inc. |
| cGMP | FDA current good manufacturing practices |
| Complaints | *Twin* Complaint and *Manikay* Complaint |
| Defendants | Akorn, Rajat Rai, Duane A. Portwood, Alan Weinstein, Ronald Johnson and Brian Tambi |
| Ex. _ | Exhibit filed herewith |
| Exchange Act | The Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, as amended |
| FDA | U.S. Food and Drug Administration |
| *Manikay* ¶ _ | Paragraph of the *Manikay* Complaint |
| *Manikay* Complaint | Complaint (Corrected), *Manikay Master Fund, LP v. Akorn, Inc.*, 19-cv-04651, ECF No. 5 (N.D. Ill. July 11, 2019) |
| Manikay | Manikay Master Fund, LP and Manikay Merger Fund, LP |
| Plaintiffs | Twin and Manikay |
| PSLRA | Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 |
| Section 10(b) | 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 |
| *Twin* ¶ _ | Paragraph of the *Twin* Complaint |
| *Twin* Complaint | Complaint, *Twin Master Fund, Ltd. v. Akorn, Inc.*, 19-cv-03648, ECF No. 1 (N.D. Ill. May 31, 2019) |
| Twin | Twin Master Fund, Ltd., Twin Opportunities Fund, LP and Twin Securities, Inc. |

## PRELIMINARY STATEMENT

As explained in Defendants' brief in support of their joint motions to dismiss the above-captioned actions, which Defendant Duane Portwood joins in full, the Complaints in the above-captioned actions are meritless and should be dismissed in their entirety. Defendant Portwood hereby moves on his own behalf to dismiss Plaintiffs' Section 10(b) and common law fraud claims with prejudice against Portwood for the additional reason that the Complaints fail adequately to plead that he acted with scienter.

Mr. Portwood is an accountant by training who joined Akorn in 2015, having previously worked at The Home Depot (a home improvement retailer), Wm. Wrigley Jr. Company (a chewing gum manufacturer) and Price Waterhouse LLP (an accounting firm).[1] Plaintiffs do not allege that Mr. Portwood has ever worked in Akorn's quality function (or any other company's), that he has ever served on any quality-related committees or that he has ever taken an active role in Akorn's cGMP compliance. Plaintiffs do not allege that he has ever worked on-site at Akorn's manufacturing or testing facilities. Plaintiffs do not allege that the nature of Mr. Portwood's responsibilities—as Akorn's Chief Financial Officer—has anything to do with the facts underlying Plaintiffs' allegations. In fact, Mr. Portwood's name appears only once in the Chancery Court's 246-page post-trial opinion (which figures centrally in the Complaints)—and not in relation to cGMP or FDA compliance.

Plaintiffs' Section 10(b) and common law fraud claims should be dismissed against Mr. Portwood because Plaintiffs have failed adequately to allege that he acted with scienter. Plaintiffs do not assert that any personnel with responsibility for quality or FDA compliance at Akorn alerted Mr. Portwood to any quality or compliance issues. Instead, Plaintiffs allege that

---

[1] Ex. 1, 2018 10-K at 26.

Mr. Portwood "took no action in response" to an anonymous complaint that Akorn's then-EVP of Global Quality "provided misleading information to [FDA]". (*Twin* ¶¶ 186-87; *Manikay* ¶¶ 184-85.) This single anonymous report was buried in a 211-page appendix to a document compiled by a consultant to Akorn's human resources department to address employee satisfaction. Plaintiffs do not allege that Mr. Portwood even read that report, or that he should reasonably have been expected to do so. This allegation falls woefully short of the "strong inference" Plaintiffs are required to establish to pursue a claim under Section 10(b). Plaintiffs also allege that Mr. Portwood had "enormous financial incentives" to mislead Akorn's investors because he "was in line to receive $4 million from the consummation of the [M]erger". (*Twin* ¶ 195; *Manikay* ¶ 193.) But a financial motive to procure a high price for Akorn's stock is far too general to demonstrate a motive to defraud. Indeed, if the motive to increase the stock price were sufficient to demonstrate scienter, that requirement would be satisfied with respect to every senior executive at every company. (*See* Section II.)

## STATEMENT OF ALLEGED FACTS

Mr. Portwood respectfully refers the Court to the Statement of Alleged Facts set forth in Defendants' Motion to Dismiss brief.

## ARGUMENT

I. LEGAL STANDARD

To prevail on their claims under Sections 10(b) of the Exchange Act and for common law fraud, Plaintiffs must demonstrate that Mr. Portwood acted with scienter. *See Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 936 (7th Cir. 2018) (Section 10(b) requires scienter); *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996) (Illinois common law fraud requires scienter). Scienter requires a showing that Mr. Portwood possessed knowledge of

or was recklessly indifferent to the fact that the alleged misstatements or omissions were false or misleading. See *Kohl's*, 895 F.3d at 936.

The scienter element of Plaintiffs' Section 10(b) claims is subject to the PSLRA's heightened pleading standard, which requires that the Complaints "state with particularity facts giving rise to *a strong inference* that [each Defendant] acted with" "[the] intention to deceive, manipulate, or defraud", or with recklessness. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313-14, 319 n.3 (2007) (emphasis added and internal quotation marks omitted); *see also Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 598, 601-02 (7th Cir. 2019) (applying this heightened standard because "fraud is frequently charged irresponsibly by people who have suffered a loss and want to find someone to blame for it" (internal quotation marks omitted)). It is not sufficient "to allege facts from which an inference of scienter rationally *could* be drawn". *Tellabs*, 551 U.S. at 323 (emphasis added). Rather, Plaintiffs must allege sufficient facts from which "a reasonable person *would* deem the inference of scienter *cogent and at least as compelling as any opposing inference* one could draw from the facts alleged". *Id.* at 324 (emphases added).

Though the PSLRA's heightened pleading standard is not applicable to Plaintiffs' common law fraud claims, Plaintiffs must still plead facts that "allow[] the [C]ourt to draw the reasonable inference" that Mr. Portwood acted with scienter. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Cornielsen*, 916 F.3d at 598. The Court "need not accept as true statements of law or unsupported conclusory factual allegations". *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

3

II.  PLAINTIFFS' SECTION 10(b) AND COMMON LAW FRAUD CLAIMS MUST BE DISMISSED AGAINST MR. PORTWOOD BECAUSE THE COMPLAINTS, AND THE DOCUMENTS INCORPORATED BY REFERENCE THEREIN, FAIL TO ESTABLISH AN INFERENCE OF SCIENTER.

Scienter cannot be inferred from the mere fact that Mr. Portwood is an executive officer of Akorn, or that he signed certain of Akorn's SEC filings that contain the challenged statements. *See Johnson v. Tellabs, Inc.*, 262 F. Supp. 2d 937, 957 (N.D. Ill. 2003) ("A pleading of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their position within the company." (internal quotation marks omitted)).[2]

Plaintiffs do not allege that Mr. Portwood, as CFO, had the expertise or responsibility to personally investigate FDA compliance issues at Akorn's manufacturing and R&D facilities. Instead, he was entitled to rely on the assessments of Akorn's quality experts when he signed Akorn's SEC filings. *E.g.* Louisiana R.S. 12:1-842 (stating that a corporate officer "who does not have knowledge that makes reliance unwarranted is entitled to rely on" information and reports prepared by employees of the company); *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370-73 (Del. 2006) (stating that if a system of controls is in place, a director is entitled to rely on that system, including by "relying on periodic reports from [employees]" unless they "consciously fail[] to monitor or oversee its operations"); *In re Huron Consulting Grp., Inc. S'holder Deriv. Litig.*, 971 N.E.2d 1067, 1083-84 (Ill. App. Ct. 2012) (same).[3] The Complaints do not allege that any of those quality experts told Mr. Portwood of material quality

---

[2] *See also In re Brightpoint, Inc. Sec. Litig.*, 2001 WL 395752, at *13 (S.D. Ind. Mar. 29, 2001) (same); *Alaska Elec. Pension Fund v. Flotek Indus, Inc.*, 915 F.3d 975, 982 (5th Cir. 2019) (same); *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1264 (10th Cir. 2001) (same); *Pedroli ex rel. Microtune, Inc. v. Bartek*, 564 F. Supp. 2d 683, 689 (E.D. Tex. 2008) ("[S]cienter must rest on something more than the defendants' positions with the company.").

[3] The standard set forth in *Stone* is applicable to corporate officers. *In re KSL Media, Inc.*, 732 F. App'x 535, 536 (9th Cir. 2018).

issues, much less that the challenged statements in Akorn's SEC filings were false or misleading. Nor do the Complaints allege that Mr. Portwood ignored reports of any kind from Akorn's quality experts. Therefore, any allegation that Mr. Portwood must have known that the challenged statements were false based on his position as CFO or his signatures on SEC filings is insufficient to plead scienter.

Recognizing that they need more, Plaintiffs attempt to allege that Mr. Portwood acted with scienter based on two theories: (1) Mr. Portwood actually knew, or recklessly disregarded, that Akorn was materially out of compliance with cGMP as a result of a single anonymous employee report; and (2) Mr. Portwood was financially motivated to conceal Akorn's regulatory compliance issues to avoid spooking would-be acquirers. Neither theory holds water.

Under the first theory, Plaintiffs assert that Mr. Portwood, Akorn's CFO, was aware of the alleged cGMP issues based solely on a few sentences buried in a massive compilation of employees survey responses. The Complaints allege:

> "The Individual Defendants were aware of Silverberg's antics. One employee (who was based at Akorn's corporate headquarters) shockingly reported in January 2016 that:
>
>> Our current Executive Vice President of Quality Assurance [Silverberg] is not fostering a willingness to change the current Akorn culture. Instead of acknowledging and embracing our compliance gaps and working collaboratively with other groups to change and mature our quality systems, he actively works to prevent collaboration and transparency. *He has actually counselled his staff to not speak to Global Quality Compliance staff and to not share information with GQC. . . . He has also provided misleading information to regulatory bodies including the US FDA.*" (*Twin* ¶ 186; *Manikay* ¶ 184.)

This allegation relies on a single, unverified, anonymous allegation buried 37 pages into a 211-page compilation of employee survey responses that was in turn appended to a presentation

entitled "Akorn Survey Results 2016: Akorn All Results".[4] The survey was compiled by an external consulting organization, and contains hundreds of employee responses on topics like "Engagement", "Connection" and "I Love My Job Because...." The statement on which Plaintiffs focus was made in response to the question "How is Akorn not operating by strong values and ethics?"[5] and was accompanied by a variety of other responses such as "Involve packaging employees in the modifications of the packaging line!",[6] "Employees are not treated equally",[7] "I think we are"[8] and "No comments".[9]

As CFO of a public company, the inference that Mr. Portwood even *read* the particular sentences upon which Plaintiffs rely could not be more tenuous. Mr. Portwood's "extensive accounting and finance experience" (*Twin* ¶ 27 (internal quotations marks omitted); *Manikay* ¶ 26) provides no logical support for the suggestion that he would have, or should have, combed through this document searching for a criticism of Akorn's FDA quality compliance—a topic beyond his expertise and authority. This single anonymous statement buried in a 211-page survey compilation does not plausibly give rise to any inference that Akorn's CFO knew (or recklessly disregarded) that Akorn was materially out-of-compliance with cGMP, let alone the "strong inference" required for a Section 10(b) claim pursuant to the PSLRA. *See Cornielsen*, 916 F.3d at 602 ("This court has determined ... that a complaint fails to satisfy the PSLRA's

---

[4] *See* Ex. 2A, Email from Bethany Anderson to Rajat Rai *et al.* (Jan. 12, 2017, 4:25 P.M.), AKORN-FK-06576515, '573. The Court may take judicial notice of this document, as the Complaint incorporates it by reference. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013).

[5] Ex. 2A, at '573.

[6] *Id.* at '571.

[7] *Id.* at '572.

[8] *Id.*

[9] *Id.* at '574.

6

particularity requirements by making conclusory allegations of scienter derived from a defendant's mere access to information.").

Finally, even if Mr. Portwood had read this anonymous statement (which Plaintiffs do not allege), it is entirely plausible that he would have assumed that this unnamed employee had an axe to grind, and would not have taken the criticism at face value. *Cf. Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*, 2012 WL 1068761, at *3 (N.D. Ill. Mar. 29, 2012) (stating that courts "discount[] allegations from confidential sources as unreliable and of limited value in establishing scienter [because] ... '[i]t is hard to see how information from anonymous sources could be deemed compelling or how we could take account of plausible opposing inferences. Perhaps these confidential sources have axes to grind. Perhaps they are lying."); *Rossy v. Merge Healthcare Inc.*, 169 F. Supp. 3d 774, 782 (N.D. Ill. 2015) (same).

Plaintiffs' second theory—that Mr. Portwood "had enormous financial incentives to have another company acquire Akorn" as he stood to receive "$4 million[10] from the consummation of the Merger"—is also unavailing. (*Twin* ¶ 195; *Manikay* ¶ 193.) A general desire to procure a high price in a merger is too general to demonstrate a motive to defraud. *Bd. Trustees of the City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 868 (S.D.N.Y. 2011) ("[S]ubstantial personal financial exposure ... is precisely the kind of generalized motive that could be imputed to any large shareholder." (internal quotation marks omitted)); *Greer v. Advanced Equities, Inc.*, 683 F. Supp. 2d 761, 775 (N.D. Ill. 2010) (same); *Last Atlantis Capital LLC v. Chicago Bd. Options Exch., Inc.*, 455 F. Supp. 2d 788, 794 (N.D. Ill. 2006) (holding that allegations of financial motive alone cannot satisfy plaintiff's burden of

---

[10] An apparent reference to the combined value of Mr. Portwood's stock consideration and possible severance payment if he were to be terminated as a result of the Merger.

7

pleading scienter); *Stephenson v. Hartford Life & Annuity Ins. Co.*, 2003 WL 22232968, at *9 (N.D. Ill. Sept. 26, 2003) (same); *Brightpoint*, 2001 WL 395752, at *13 ("[A] plaintiff cannot allege scienter based merely upon a defendant's ... desire to increase incentive compensation, or similar factors that would be true for nearly all corporate executives."); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841-42 (7th Cir. 2007) (holding that a common law fraud claim failed to allege scienter because it relied solely on the defendant's "interest in fees"). Mr. Portwood's alleged motivation to sell Akorn at a high price tightly aligned his interests with those of Akorn's other investors. This allegation is insufficient to meet the plausibility pleading requirement for common law fraud, much less the demanding "strong inference" pleading requirement of the PSLRA.

At bottom, Plaintiffs assert that Mr. Portwood made false or misleading statements, and knew or was reckless not to know that those statements were false or misleading based on (i) a single paragraph buried in a voluminous survey and (ii) a general financial motive. That is insufficient to raise any reasonable inference of scienter, let alone a strong one. By far the more "cogent" and "compelling" inference from Plaintiffs' allegations is that Mr. Portwood—a highly skilled accountant who came to Akorn from The Home Depot and had neither expertise in nor authority over FDA compliance issues—had neither knowledge of nor reckless disregard for the cGMP data integrity failures that Plaintiffs allege in their Complaints.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Section 10(b) and common law fraud claims against Defendant Portwood should be dismissed in their entirety and with prejudice.

8

Respectfully submitted,

DUANE A. PORTWOOD,

By his attorneys,

/s/ Robert H. Baron
Robert H. Baron (admitted *pro hac vice*)
   CRAVATH, SWAINE & MOORE LLP
     825 Eighth Avenue
      New York, NY 10019
        rbaron@cravath.com

James R. Figliulo
   FIGLIULO & SILVERMAN, P.C.
    10 S. LaSalle Street, Suite 3600
     Chicago, IL 60603
       jfigliulo@fslegal.com

Date: September 13, 2019

**Certificate of Service**

The undersigned attorney hereby certifies that he caused a copy of the attached **Defendant Duane A. Portwood's Memorandum of Law In Support of His Supplemental Motions to Dismiss In Part the** *Twin Master Fund* **and** *Manikay Master Fund* **Complaints For Lack of Scienter Pursuant to Fed. R. Civ. P. 12(b)(6) and 15 U.S.C. § 78u-4** to be electronically filed with the Clerk of the Court on September 13, 2019. Notice of this filing will be served upon counsel of record via Electronic Notification by the District Court's ECF Filing System.

/s/ Robert H. Baron
Robert H. Baron (admitted *pro hac vice*)